IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GEOFFREY POLK,** *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 4:25-cv-02652 |
| **CASSIE BROWN, IN HER OFFICIAL CAPACITY AS THE TEXAS INSURANCE COMMISSIONER,** *Defendant.* | § § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT**

TO THE HONORABLE U.S. DISTRICT JUDGE:

Plaintiff, Geoffrey Polk, *pro se*, files this Response in Opposition to the Texas Insurance Commissioner's ("Commissioner") Motion to Dismiss ("Motion to Dismiss") Plaintiff's Complaint (Dkt. 1) and Brief in Support thereof. Plaintiff has adequately pled causes of action under the Privileges and Immunities Clause of Article IV of the United States Constitution and the Equal Protection Clause of the 14th Amendment to the United States Constitution, as applied to the states. Plaintiff asks that the Motion to Dismiss be denied.

Plaintiff also files commensurate herewith a Motion for Preliminary Injunction and incorporates the same herein.

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

1

Plaintiff seeks a Declaratory Judgment and Injunctive Relief relating to Section 2652.051(c)(1) of the Texas Insurance Code which requires an individual to be a "bona fide resident" of Texas or a "state adjacent" to Texas to obtain an Escrow Officer License ("Residency Requirement").

Plaintiff alleges Section 2652.051(c)(1) and 2652.056(1) of the Texas Insurance Code ("Statutes") violate the Privileges and Immunities Clause and Equal Protection Clause of the United States Constitution and seeks a Declaratory Judgment declaring these sections unconstitutional including injunctive relief to prohibit enforcement.

Plaintiff alleges that they have a "fundamental right" to be an "Escrow Officer" and that the Residency Requirement is not "closely related to a substantial governmental interest".  Further, the Defendant has not demonstrated that "non-residents" are a "peculiar source of evil" that the Statutes attempt to address nor has any admissible evidence been proffered to meet the state's burden with respect to the same.

The Plaintiff also alleges that the statute bears no "rational relationship to a legitimate government interest" in violation of the Equal Protection clause of the United States Constitution.  Accordingly, the Commissioner's Motion to Dismiss must be denied.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper when a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court views all well-pleaded facts in the light most favorable to the plaintiff, *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004), but it need not accept "conclusory allegations, unwarranted factual inferences or legal conclusions." *In re Great Lakes Dredge & Dock Co., LLC,* 624 F.3d 201, 210 (5th Cir. 2010)(citations and quotation marks omitted). On a Rule 12(b)(6) motion, the court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint," along with any matters on which the court may take judicial notice. *See, e.g.*, *Dorsey*, 540 F.3d 333, 338 (5th Cir. 2008); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## SUMMARY OF ARGUMENT

The Defendant's Motion to Dismiss fails on three grounds: 1) Plaintiff has pled sufficient facts for this Court to conclude that Plaintiff has a fundamental

right to be an "Escrow Officer" and that Plaintiff is pursuing a "common calling" with respect thereto (2) the Commissioner has failed to meet their burden that the statute is "closely related to the advancement of a substantial state interest" nor have they provided any evidence that non-residents are a "peculiar source of evil" that the Statutes intend to address and (3) there are no set of facts that one can "reasonably conceive" to justify the Residency Requirement for purposes of the Equal Protection clause.

## ARGUMENT

I. **Plaintiff has pled sufficient facts for this Court to find a cognizable claim under the Privileges and Immunities Clause**

   A. **Fundamental Right to be an "Escrow Officer"**

The Privileges and Immunities Clause of Article IV of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens[1] in the several States." U.S. Const. art. IV, § 2, cl. 1. "The object of the Privileges and Immunities Clause is to 'strongly ... constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lunding v. N.Y. Tax Appeals*

---

[1] For purposes of a privileges and immunities evaluation, the term 'resident' and 'citizen' are deemed to be interchangeable. *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 279 n. 6 (1985).

4

*Tribunal*, 522 U.S. 287, 296 (1998) (*citing Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868)).

The Clause thus "provides important protections for nonresidents who enter a State," and while "[t]hose protections are not 'absolute,' ... the Clause 'does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.'" *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (internal citations omitted).

The Supreme Court enunciated a two-step test to determine whether there is a violation of the privileges and immunities protections. As stated in *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988):

> First, the activity in question must be sufficiently basic to the livelihood of the Nation ... as to fall within the purview of the Privileges and Immunities Clause.... Second, if the challenged restriction deprives nonresidents of a protected privilege, [the court] will invalidate it only if [it] conclude[s] that the restriction is not closely related to the advancement of a substantial state interest.

The first step in this inquiry is to determine whether the activity in question is a right worthy of the protection of the privileges and immunities clause.

In this matter, the activity is Geoffrey Polk's licensure as an "Escrow Officer." As pled in the Complaint, Geoffrey Polk "holds non-resident Title Producer licenses in Indiana, Wisconsin, North Dakota, West Virginia, Georgia, Maryland, Montana, Pennsylvania, Michigan, Virginia, Tennessee, New Jersey, South Carolina,

5

Colorado, Ohio, North Carolina, Minnesota, Nevada, New Hampshire, Rhode Island, Maine and Vermont as well as Title Examination and Escrow licenses in Utah. Polk holds a non-resident Qualified Title Principal Agent license in Missouri." ¶6, Complaint. Polk also holds an active resident Title Producer license in Florida, License No. G098349. ¶5, Complaint.

For an activity to be worthy of the protection of the Privileges and Immunities clause, it must be "sufficiently basic to the livelihood of the Nation" that it constitutes a fundamental right. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978). The ability to pursue one's profession or "common calling" is one of the limited number of foundational rights protected under the privileges and immunities clause. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); *see also United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 219 (1984) ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause."). Indeed, "[m]any, if not most, of [the Supreme Court's] cases expounding the Privileges and Immunities Clause have dealt with this basic and essential activity." *Camden*, 465 U.S. at 219.

The Court has further protected Plaintiffs' fundamental rights, to "ply their trade, practice their occupation, [and] pursue a common calling." *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978). As well, "protectionist" aims meant to protect one's own citizenry will not be met with favor by the Court. *See Brusznicki v. Prince George's*

*Cnty.,* 42 F.4th 413, 417 (4th Cir. 2022) (holding that a Md. limited tax sale auction was constitutionally offensive because it "tramples on fundamental rights to… pursue a chosen profession without advancing any substantial state interests").

The Court should also consider as extremely persuasive authority two recent rulings out of the 9th Circuit involving this same plaintiff. On April 28, 2025, in *Polk v. Alaska Division of Insurance*, No. 3:24-cv-00207-HRH, the U.S. District Court for the District of Alaska permanently enjoined enforcement of Alaska Statute § 21.66.270, which had required title insurance producers to be state residents. The court entered a stipulated final judgment declaring the residency restriction unconstitutional under the Privileges and Immunities Clause of Article IV.

Similarly, on May 7, 2025, in *Polk v. Stolfi*, No. 3:24-cv-01670-IM, the U.S. District Court for the District of Oregon granted summary judgment in Plaintiff's favor, declaring unconstitutional Oregon statutes O.R.S. 744.062(1)(i) and 744.063(6), which similarly excluded non-residents from licensure as title insurance producers. The court applied binding Ninth Circuit precedent (*Molasky-Arman*) and held that such protectionist laws violate the Privileges and Immunities Clause. Implicit in both of these precedents is the precept that being a "title agent" or "escrow officer" is a "fundamental right."

Here, Geoffrey Polk is attempting to "ply" his trade as an "Escrow Officer." He maintains licensure in numerous states with respect to the same. Further, the

Plaintiff has pled sufficient facts to show that he is pursuing his "livelihood" by seeking the same licensure in Texas. As such, being an Escrow Officer is thereby a "fundamental right" to "practice" his occupation.

### B.  Defendant has failed to meet their burden with respect to the Statutes

The second step in the privileges and immunities analysis is to determine whether the restriction is "closely related to the advancement of a substantial state interest."

The Privileges and Immunities Clause "does not preclude disparity in treatment where substantial reasons exist for the discrimination and the degree of discrimination bears a close relation to such reasons. *Friedman*, 487 U.S. at 67. This inquiry, however, must not overlook the purpose of the Privileges and Immunities Clause, which "is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer v. Witsell*, 334 U.S. 385, 398 (1948).

Following *Toomer*, the Court in *Hicklin v. Orbeck* invalidated a statute where the State presented no evidence that nonresidents were a source of the evil that the statute was enacted to remedy. 437 U.S. 518, 526 (1978) (citation omitted). In 1972, "professedly for the purpose of reducing unemployment in the State, the Alaska Legislature passed an Act entitled 'Local Hire Under State Leases.,'" which required that "all oil and gas leases, easements or right-of-way permits for oil or gas pipeline

8

purposes, unitization agreements, or any renegotiation of any of the preceding to which the state is a party" contain a provision "requiring the employment of qualified Alaska residents" in preference to nonresidents. *Id.* at 520.

There, the Court observed that although a "statute may not violate the Clause if the state shows 'something to indicate that noncitizens constitute a particular source of evil at which the statute is aimed and, beyond this, the State has no burden to prove that its laws are not violative of the … Clause, certainly no showing was made on this record that nonresidents were "a peculiar source of the evil" [the statute] was enacted to remedy, namely, Alaska's uniquely high unemployment." *Id.* at 526 (internal citations omitted).

These cases demonstrate that the mere fact that a statute achieves its purported objectives does not end the inquiry. If that statute discriminates against nonresidents and there is no evidence that nonresidents are a source of evil that the statute aims to address, the state actor will not be able to carry its burden of proving that the restrictions placed upon nonresidents are closely related to a substantial state interest.

In *Friedman v. Supreme Court of Virginia*, the plaintiff brought an action to invalidate a Rule that required experienced lawyers who resided out of state to pass the Virginia bar and show that they intended to open an office in Virginia to be licensed in Virginia, whereas residents of the state could get licensed solely on

9

motion. 822 F.2d 423, 424 (4th Cir. 1987), *aff'd*, 487 U.S. 59 (1988). The State argued that the Rule served a legitimate state interest by ensuring that attorneys admitted to the bar are familiar with the laws of Virginia. *Id.* at 425.

First, the Court rejected Virginia's argument that the Rule furthered the state goal of enhancing the quality of lawyers in the state. It was unable to find any nexus between residence and lawyer competence, nor was Virginia able to articulate such a nexus. *Id.* It follows that there must be a logical nexus between the burden placed on nonresidents and the end goal which the proposed statute wishes to achieve.

Second, the Court found that the residency requirement did not necessarily facilitate compliance with the requirement that an attorney must intend to practice full time in Virginia, as required by Rule 1A:1(d) because a resident of Virginia is more likely to comply with this commitment than a nonresident. *Id.* at 429. The Court also found this logic "tenuous" as there was no evidence offered by the State to support the argument that a non-resident will be less truthful than a resident when stating his intention to practice full-time in Virginia.

The Defendants' Motion to Dismiss lacks any detailed analysis of how the Statutes are "closely related to the advancement of a substantial state interest." It is unclear exactly what interests, if any, the requirement advances other than mere protectionism similar to that found offensive in the foregoing cases.

The only argument the Defendant makes is that "Keeping the escrowed

funds within state lines and subject to the jurisdictional boundaries of the State of Texas helps to ensure the safety of the escrowed funds and protects both the individual and corporate entities' rights to such funds." Page 5-6, Motion to Dismiss.

The problem with this argument is two-fold: First, it's a conclusory statement and the Defendant has offered no evidence to support it. Second, its belied by the Statute itself which allows "non-residents" to obtain their Texas "Escrow Officer" license if they reside in an "adjacent state." No argument is provided why the funds are still safe in Arkansas but somehow lose safety when they reach Tennessee.

Further, as noted in the case law, the burden remains on the state to designate exactly how the offensive provision advances any substantial state interests as well as how the same are "closely related." The Defendant has not met that burden.

Lastly, the Defendant has not even attempted to proffer any evidence (nor can they to maintain a 12(b)(6) motion) as to how the Statutes address a "peculiar source of evil" on the part of "non-residents".

Accordingly, the Defendant has failed to meet their burden and the Motion to Dismiss must be denied.

II.     **The Statutes lack any "rational basis"**

Plaintiff also seeks a Declaratory Judgment that Section 2652.051(c)(1) and Section 2652.056(1) of the Texas Insurance Code are unconstitutional and in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230 (1981). When social or economic legislation is to be reviewed, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process and not by the courts. *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174 (1980).

When analyzing a State statute under the rational basis test, the courts will not set aside a discriminating classification <u>if any</u> set of facts may be reasonably conceived to justify the classification. The court will not even go so far as to examine if the classification devised by the legislative body achieves its desired goal but will only examine if the State Legislature could have believed that the provision would further a legitimate purpose. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S.

456 (1981)(emphasis added). "Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Vance v. Bradley,* 440 U.S. 93, 111 (1976).

The Statutes require that one be a "resident of Texas" or an "adjacent state" to obtain a Texas Escrow Officer License.

Although the Defendant has attempted to justify this statute by arguing that if the Defendant were required to "pursue enforcement to protect settlement funds in other states, logistical and procedural barriers would certainly implicate the safety of such funds and potentially destroy the safe and reliable sales process that has existed for years." Page 9, Motion to Dismiss. The Defendant further argues that "Conflict of law issues, time constraints and other plausible barriers would further deteriorate the confidence of both buyers and sellers of Texas real estate." *Id.*

The fundamental problem with this argument is the Statutes' allowance for residents of "adjacent states" to obtain their "Escrow Officer" license while precluding residents of "non-adjacent states" to do the same.

One could surmise an argument that the issue was one of geography. Put another way, perhaps the Defendant would have a "rational basis" to believe that geographical proximity were important to the enforcement of the laws (i.e. the

ability to obtain domicile or control over "adjacent" residents easier than "non-adjacent.")  However, this argument is belied by simple logic.

For example, it is approximately 900 miles from Shiprock, New Mexico to the Texas border while it is only approximately 50 miles from Liberal, Kansas, a non-adjacent state, to the Texas border.[2]  One cannot surmise any rational basis for the Statute's requirement that a resident of New Mexico located in Shiprock is entitled to an Escrow Officer license while a resident of Kansas located in Liberal is not solely based on the fact that one state shares a border with Texas and the other does not.

The Conflict of Laws argument also fails once one includes adjacent states. There simply is no rational basis why Texas is able to guarantee the "integrity of Texas real estate transactions" while allowing Arkansas residents to be Texas Escrow Officers but those of Missouri would lead to a "lack of confidence" in the laws.

The argument is further bolstered by the fact that Attorney Polk is already a licensed Texas Attorney.  ¶4, Complaint.

What rational argument could be made that he is entitled to a supreme level of trust (as a licensed Texas Attorney) but not the same of a Texas Escrow officer?

---

[2] To the extent necessary, the Plaintiff asks that the Court take Judicial Notice of this fact, as allowed by Federal Rule of Evidence 201.

Or, can any argument be made that a non-resident is entitled to a Texas law license but not that of a Texas Escrow officer?

Lastly, the Defendant's argument that the policy has been in place since 1967 is unavailing. The passage of time has no legal significance, nor should this Court afford the same any merit.

While the burden is on the Plaintiff to allege and prove that the statute lacks any rational basis, the Plaintiff is at a loss as to what the same would be given the foregoing.

## CONCLUSION AND PRAYER

Plaintiff has pled sufficient causes of action under the Privileges and Immunities and the Equal Protection clauses of the United States Constitution. As the Defendant's Motion to Dismiss is without legal basis, Plaintiff respectfully asks that this Court deny the same and award such other and further relief to which the Plaintiff may show himself to be justly enriched.

       __/s/ Geoffrey Polk_____
            Geoffrey Polk, Esq.
       Geoffrey Polk, Esq.
       7627 Lake St. Ste 206 A34
       River Forest, IL  60305
       Ph:  312-929-3861
       Email :  Geoff@geoffreypolk.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of August, 2025, a copy of the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

                                       */s/ Geoffrey Polk*
                                         Geoffrey Polk, Esq.