IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GEOFFREY POLK,** § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | CIVIL ACTION NO.  4:25-cv-02652 | |
| § | | |
| **CASSIE BROWN, IN HER** § | | |
| **OFFICIAL CAPACITY AS THE** § | | |
| **TEXAS INSURANCE** § | | |
| **COMMISSIONER,** § | | |
| *Defendant.* | | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

TO THE HONORABLE U.S. DISTRICT JUDGE:

Plaintiff moves for a preliminary injunction under Rule 65(a) to halt the ongoing enforcement of unconstitutional residency requirements for Texas Escrow Officer Licenses. These provisions—Tex. Ins. Code §§ 2652.051(c)(1) and 2652.056(1)—discriminate against nonresidents, barring Plaintiff from his chosen occupation in Texas in violation of the Privileges and Immunities Clause and the Equal Protection Clause. Absent immediate relief, Plaintiff will continue to suffer irreparable harm to his constitutional rights and professional livelihood.

Plaintiff also files commensurate herewith their opposition to Defendant's Motion to Dismiss and Brief in Support and incorporates the same herein.

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

1

Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 to halt the enforcement of Texas Insurance Code § 2652.051(c)(1), which conditions issuance of an Escrow Officer License on being a "bona fide resident" of Texas or a state adjacent to Texas (the "Residency Requirement"). Plaintiff also challenges § 2652.056(1), which incorporates the same restriction (collectively, the "Statutes").

Plaintiff alleges that the Statutes violate the Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution. He seeks a declaration that these provisions are unconstitutional and an injunction barring their enforcement.

Plaintiff has a fundamental right to pursue the common calling of an escrow officer. The Residency Requirement is not closely related to any substantial governmental interest, and Defendant has produced no evidence that nonresidents are a "peculiar source of the evil" the Statutes purport to address. Nor has Defendant offered any admissible evidence capable of meeting the State's burden under the governing constitutional standards.

The Statutes also fail rational basis review under the Equal Protection Clause, as they bear no rational relationship to a legitimate governmental interest.

A preliminary injunction is appropriate where the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of

irreparable harm absent relief; (3) that the threatened injury outweighs any harm the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). Plaintiff satisfies each element, and the Court should enjoin enforcement of the challenged provisions pending final judgment.

## SUMMARY OF ARGUMENT

The Texas statutes at issue impose a clear and impermissible barrier to the practice of a common calling by conditioning an Escrow Officer License on state residency or residency in an adjacent state. This restriction violates the Privileges and Immunities Clause because it discriminates against nonresidents with respect to a fundamental right — pursuing a lawful occupation — without any substantial justification. The Supreme Court has repeatedly struck down such restrictions when the State cannot demonstrate that nonresidents are a peculiar source of the harm addressed by the law and that the restriction is closely related to that harm. *See Supreme Court of N.H. v. Piper*, 470 U.S. 274 (1985); *Supreme Court of Va. v. Friedman*, 487 U.S. 59 (1988).

Texas has offered no admissible evidence that nonresident escrow officers present any unique risk or that residency has any rational relationship to competence, oversight, or consumer protection. The Statutes likewise fail rational basis review under the Equal Protection Clause. This Court need not

speculate; similar residency restrictions have already been invalidated in multiple jurisdictions in actions brought by this Plaintiff. See *Polk v. Alaska*, No. 3:24-cv-00207-HRH (D. Alaska Apr. 28, 2025); *Polk v. Stolfi*, No. 3:24-cv-01670-IM (D. Or. May 7, 2025).

Plaintiff easily satisfies each element for preliminary injunctive relief. The constitutional claims present a substantial likelihood of success on the merits; the continued denial of licensure inflicts irreparable harm by excluding Plaintiff from his profession in Texas; the balance of equities favors Plaintiff, as the State suffers no legitimate harm from licensing qualified nonresidents; and vindicating constitutional rights is squarely in the public interest.

This Court should therefore grant Plaintiff's motion and enjoin enforcement of the unconstitutional residency restrictions pending final judgment.

## ARGUMENT

### I.   Plaintiff has standing to Challenge Section 2652.051(c)(1) and 2652.056(1) of the Texas Insurance Code ("Statutes")

Plaintiff satisfies the constitutional and prudential requirements for standing. First, Plaintiff has suffered an injury in fact.

On April 1, 2025, Plaintiff submitted a proper application for a Texas Escrow Officer License. ¶5, Polk Affidavit. The next day, Defendant denied the

application solely on the basis of the statutory residency requirement. ¶6, Polk Affidavit.

That denial has prevented Plaintiff — a licensed title professional in more than thirty states — from engaging in his chosen profession in Texas, a recognized economic liberty and "common calling" protected under the Privileges and Immunities Clause. This denial is concrete, particularized, and ongoing. ¶15, Polk Affidavit.

Second, the injury is fairly traceable to Defendant's enforcement of Section 2652.051(c)(1) and Section 2652.056(1). The denial letters (Exhibits A and B to the Polk Affidavit) expressly cite the residency restriction as the reason for refusing to issue the license.

Third, the injury is redressable by a favorable decision. A declaration that the residency provisions are unconstitutional and an injunction barring their enforcement would remove the only stated barrier to licensure. Upon such relief, Plaintiff would be eligible to obtain an Escrow Officer License and immediately engage in escrow transactions in Texas.

Because Plaintiff is the direct object of the challenged licensing restrictions, there is no question that he has standing to seek both prospective injunctive relief and a declaratory judgment under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and its progeny. The challenged statutes currently and unlawfully

bar Plaintiff from his profession in Texas, and this Court's intervention is necessary to vindicate his constitutional rights.

## II. Plaintiffs are Substantially Likely to Prevail on the Merits
### a. Fundamental right to be an "Escrow Officer"

The Privileges and Immunities Clause of Article IV of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens[1] in the several States." U.S. Const. art. IV, § 2, cl. 1. "The object of the Privileges and Immunities Clause is to 'strongly ... constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998) (*citing Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868)).

The Clause thus "provides important protections for nonresidents who enter a State," and while "[t]hose protections are not 'absolute,' ... the Clause 'does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.'" *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (internal citations omitted).

---

[1]For purposes of a privileges and immunities evaluation, the term 'resident' and 'citizen' are deemed to be interchangeable. *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 279 n. 6 (1985).

The Supreme Court enunciated a two-step test to determine whether there is a violation of the privileges and immunities protections. As stated in *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988):

> First, the activity in question must be sufficiently basic to the livelihood of the Nation ... as to fall within the purview of the Privileges and Immunities Clause.... Second, if the challenged restriction deprives nonresidents of a protected privilege, [the court] will invalidate it only if [it] conclude[s] that the restriction is not closely related to the advancement of a substantial state interest.

The first step in this inquiry is to determine whether the activity in question is a right worthy of the protection of the privileges and immunities clause.

In this matter, the activity is Geoffrey Polk's licensure as an "Escrow Officer." Geoffrey Polk holds non-resident Title Producer licenses in Indiana, Wisconsin, North Dakota, West Virginia, Georgia, Maryland, Montana, Pennsylvania, Michigan, Virginia, Tennessee, New Jersey, South Carolina, Colorado, Ohio, North Carolina, Minnesota, Nevada, New Hampshire, Rhode Island, Maine and Vermont as well as Title Examination and Escrow licenses in Utah. ¶10, Polk Affidavit. Polk holds a non-resident Qualified Title Principal Agent license in Missouri." ¶10, Polk Affidavit. Polk also holds an active resident Title Producer license in Florida, License No. G098349. ¶9, Polk Affidavit.

For an activity to be worthy of the protection of the Privileges and Immunities clause, it must be "sufficiently basic to the livelihood of the Nation" that it

7

constitutes a fundamental right. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978). The ability to pursue one's profession or "common calling" is one of the limited number of foundational rights protected under the privileges and immunities clause. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); *see also United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 219 (1984) ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause."). Indeed, "[m]any, if not most, of [the Supreme Court's] cases expounding the Privileges and Immunities Clause have dealt with this basic and essential activity." *Camden*, 465 U.S. at 219.

The Court has further protected Plaintiffs' fundamental rights, to "ply their trade, practice their occupation, [and] pursue a common calling." *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978). As well, "protectionist" aims meant to protect one's own citizenry will not be met with favor by the Court. *See Brusznicki v. Prince George's Cnty.,* 42 F.4th 413, 417 (4th Cir. 2022) (holding that a Md. limited tax sale auction was constitutionally offensive because it "tramples on fundamental rights to… pursue a chosen profession without advancing any substantial state interests").

Here, Geoffrey Polk is attempting to "ply" his trade as an "Escrow Officer." He maintains licensure in numerous states with respect to the same. Further, the Plaintiff has pled sufficient facts to show that he is pursuing his "livelihood" by

8

seeking the same licensure in Texas. As such, being an Escrow Officer is thereby a "fundamental right" to "practice" his occupation.

### b. No "peculiar evil" on the part of non-residents

The second step in the privileges and immunities analysis is to determine whether the restriction is "closely related to the advancement of a substantial state interest."

The Privileges and Immunities Clause "does not preclude disparity in treatment where substantial reasons exist for the discrimination and the degree of discrimination bears a close relation to such reasons. *Friedman*, 487 U.S. at 67. This inquiry, however, must not overlook the purpose of the Privileges and Immunities Clause, which "is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer v. Witsell*, 334 U.S. 385, 398 (1948).

Following *Toomer*, the Court in *Hicklin v. Orbeck* invalidated a statute where the State presented no evidence that nonresidents were a source of the evil that the statute was enacted to remedy. 437 U.S. 518, 526 (1978) (citation omitted). In 1972, "professedly for the purpose of reducing unemployment in the State, the Alaska Legislature passed an Act entitled 'Local Hire Under State Leases.,'" which required that "all oil and gas leases, easements or right-of-way permits for oil or gas pipeline purposes, unitization agreements, or any renegotiation of any of the preceding to

9

which the state is a party" contain a provision "requiring the employment of qualified Alaska residents" in preference to nonresidents. *Id.* at 520.

There, the Court observed that although a "statute may not violate the Clause if the state shows 'something to indicate that noncitizens constitute a particular source of evil at which the statute is aimed and, beyond this, the State has no burden to prove that its laws are not violative of the … Clause, certainly no showing was made on this record that nonresidents were "a peculiar source of the evil" [the statute] was enacted to remedy, namely, Alaska's uniquely high unemployment." *Id.* at 526 (internal citations omitted).

These cases demonstrate that the mere fact that a statute achieves its purported objectives does not end the inquiry. If that statute discriminates against nonresidents and there is no evidence that nonresidents are a source of evil that the statute aims to address, the state actor will not be able to carry its burden of proving that the restrictions placed upon nonresidents are closely related to a substantial state interest.

In *Friedman v. Supreme Court of Virginia*, the plaintiff brought an action to invalidate a Rule that required experienced lawyers who resided out of state to pass the Virginia bar and show that they intended to open an office in Virginia to be licensed in Virginia, whereas residents of the state could get licensed solely on motion. 822 F.2d 423, 424 (4th Cir. 1987), *aff'd*, 487 U.S. 59 (1988). The State

argued that the Rule served a legitimate state interest by ensuring that attorneys admitted to the bar are familiar with the laws of Virginia. *Id.* at 425.

First, the Court rejected Virginia's argument that the Rule furthered the state goal of enhancing the quality of lawyers in the state. It was unable to find any nexus between residence and lawyer competence, nor was Virginia able to articulate such a nexus. *Id.* It follows that there must be a logical nexus between the burden placed on nonresidents and the end goal which the proposed statute wishes to achieve.

Second, the Court found that the residency requirement did not necessarily facilitate compliance with the requirement that an attorney must intend to practice full time in Virginia, as required by Rule 1A:1(d) because a resident of Virginia is more likely to comply with this commitment than a nonresident. *Id.* at 429. The Court also found this logic "tenuous" as there was no evidence offered by the State to support the argument that a non-resident will be less truthful than a resident when stating his intention to practice full-time in Virginia.

The Defendants' Motion to Dismiss lacks any detailed analysis of how the Statutes are "closely related to the advancement of a substantial state interest." It is unclear exactly what interests, if any, the requirement advances other than mere protectionism similar to that found offensive in the foregoing cases.

The only argument the Defendant makes is that "Keeping the escrowed funds within state lines and subject to the jurisdictional boundaries of the State of Texas

11

helps to ensure the safety of the escrowed funds and protects both the individual and corporate entities' rights to such funds." Page 5-6, Motion to Dismiss.

The problem with this argument is two-fold: First, it's a conclusory statement and the Defendant has offered no evidence to support it. Second, it's belied by the Statute itself which allows "non-residents" to obtain their Texas "Escrow Officer" license if they reside in an "adjacent state." No argument is provided why the funds are still safe in Arkansas but somehow lose safety when they reach Tennessee.

Further, as noted in the case law, the burden remains on the state to designate exactly how the offensive provision advances any substantial state interests as well as how the same are "closely related." The Defendant cannot meet that burden.

Lastly, the Defendant has not even attempted to proffer any evidence as to how the Statutes address a "peculiar source of evil" on the part of "non-residents". Accordingly, the Defendant has failed to meet their burden and it is clear that the Plaintiff is substantially likely to prevail on the merits.

c. **The Statutes lack any "rational basis" and fail equal protection analysis**

Plaintiff also seeks a Declaratory Judgment that Section 2652.051(c)(1) and Section 2652.056(1) of the Texas Insurance Code are unconstitutional and in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause commands that no State shall "deny to any

12

person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230 (1981). When social or economic legislation is to be reviewed, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process and not by the courts. *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174 (1980).

When analyzing a State statute under the rational basis test, the courts will not set aside a discriminating classification <u>if any</u> set of facts may be reasonably conceived to justify the classification. The court will not even go so far as to examine if the classification devised by the legislative body achieves its desired goal but will only examine if the State Legislature could have believed that the provision would further a legitimate purpose. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456 (1981)(emphasis added). "Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Vance v. Bradley,* 440 U.S. 93, 111 (1976).

The Statutes require that one be a "resident of Texas" or an "adjacent state" to obtain a Texas Escrow Officer License.

Although the Defendant has attempted to justify this statute by arguing that if the Defendant were required to "pursue enforcement to protect settlement funds in other states, logistical and procedural barriers would certainly implicate the safety of such funds and potentially destroy the safe and reliable sales process that has existed for years." Page 9, Motion to Dismiss. The Defendant further argues that "Conflict of law issues, time constraints and other plausible barriers would further deteriorate the confidence of both buyers and sellers of Texas real estate." *Id.*

The fundamental problem with this argument is the Statutes' allowance for residents of "adjacent states" to obtain their "Escrow Officer" license while precluding residents of "non-adjacent states" to do the same.

One could surmise an argument that the issue was one of geography. Put another way, perhaps the Defendant would have a "rational basis" to believe that geographical proximity were important to the enforcement of the laws (i.e. the ability to obtain domicile or control over "adjacent" residents easier than "non-adjacent.") However, this argument is belied by simple logic.

For example, it is approximately 900 miles from Shiprock, New Mexico to the Texas border while it is only approximately 50 miles from Liberal, Kansas, a

14

non-adjacent state, to the Texas border.[2] One cannot surmise any rational basis for the Statute's requirement that a resident of New Mexico located in Shiprock is entitled to an Escrow Officer license while a resident of Kansas located in Liberal is not solely based on the fact that one state shares a border with Texas and the other does not.

The Conflict of Laws argument also fails once one includes adjacent states. There simply is no rational basis why Texas can guarantee the "integrity of Texas real estate transactions" while allowing Arkansas residents to be Texas Escrow Officers but those of Missouri would lead to a "lack of confidence" in the laws.

The argument is further bolstered by the fact that Attorney Polk is already a licensed Texas Attorney. ¶8, Polk Affidavit.

What rational argument could be made that he is entitled to a supreme level of trust (as a licensed Texas Attorney) but not the same of a Texas Escrow officer? Or, can any argument be made that a non-resident is entitled to a Texas law license but not that of a Texas Escrow officer?

Lastly, the Defendant's argument that the policy has been in place since 1967 is unavailing. The passage of time has no legal significance, nor should this Court afford the same any merit.

---

[2] To the extent necessary, the Plaintiff asks that the Court take Judicial Notice of this fact, as allowed by Federal Rule of Evidence 201.

While the burden is on the Plaintiff to allege and prove that the statute lacks any rational basis, the Plaintiff is at a loss as to what the same would be given the foregoing.

### III. Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief

The loss of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff is presently and continuously excluded from engaging in his chosen profession in Texas solely because of the unconstitutional residency restrictions in Sections 2652.051(c)(1) and 2652.056(1). Each day that passes without relief is another day Plaintiff is denied the opportunity to serve clients, generate income, and expand his multistate title practice in Texas — opportunities that cannot be retroactively restored or compensated fully by money damages.

The Fifth Circuit has long recognized that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012). This is particularly true where, as here, the challenged law bars the Plaintiff from pursuing his lawful occupation, a "fundamental right" under the Privileges and Immunities Clause.

Plaintiff has invested substantial time, resources, and goodwill in building a

nationwide title operation licensed in more than forty states. Texas's enforcement of its residency restrictions not only inflicts ongoing economic harm but also disrupts established business relationships, prevents the onboarding of ready clients, and diminishes Plaintiff's competitive position in the Texas marketplace. These harms are neither speculative nor remote; they are concrete, immediate, and continuing.

Because the injury stems from the ongoing enforcement of unconstitutional statutes, monetary damages alone cannot make Plaintiff whole. The only adequate remedy is prospective injunctive relief preventing further enforcement during the pendency of this litigation.

## IV. The Balance of Equities and Public Interest Weigh in Favor of Granting Injunctive Relief

When the government is a party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both weigh heavily in favor of granting relief here.

On Plaintiff's side of the scale is the vindication of core constitutional protections. The Fifth Circuit has recognized that "injunctions protecting First Amendment [and analogous] freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). The Privileges and Immunities Clause and Equal Protection Clause safeguard the ability of qualified individuals to pursue their chosen occupation

free from arbitrary state barriers. Enjoining enforcement of an unconstitutional statute serves the highest public interest: ensuring that state laws conform to the U.S. Constitution.

On Defendant's side of the scale, there is no legitimate harm from licensing a fully qualified, experienced escrow officer who meets all professional requirements apart from residency. Texas will continue to regulate escrow officers through its existing statutory framework, including examination, bonding, and oversight requirements. Removing the residency restriction does not compromise consumer protection or the integrity of the title industry — and Texas has offered no evidence to the contrary.

The equities thus weigh decisively in favor of relief. Preventing the ongoing enforcement of an unconstitutional barrier causes no lawful harm to the State, but continuing enforcement irreparably injures Plaintiff and undermines public confidence in the rule of law. Granting the injunction will preserve the status quo in a way that both protects Plaintiff's constitutional rights and serves the broader public interest in free and open interstate commerce in lawful occupations.

## V.   No Bond Should be Required

"[T]he amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court," and the court "may elect to require no security at

all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Because this case concerns constitutional freedoms and Defendant will not suffer any monetary harm from the Court's preliminary injunction, Plaintiffs respectfully request that the Court require no bond.

## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) declare that Sections 2652.051(c)(1) and 2652.056(1) of the Texas Insurance Code violate the Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution; (2) enter a preliminary and permanent injunction prohibiting Defendant from enforcing these provisions; and (3) grant such further and additional relief as the Court deems just and proper.

___/S/Geoffrey Polk_____
Geoffrey Polk, Esq.
7627 Lake St. Ste 206 A34
River Forest, IL  60305
Ph:  312-929-3861
Email :  Geoff@geoffreypolk.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2025, a copy of the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Geoffrey Polk*
Geoffrey Polk, Esq.

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that on the 12th day of August, 2025, that I conferred with Defendant's counsel regarding Plaintiff's Motion for Preliminary Injunction. Defendant's counsel has indicated that they are opposed to the Plaintiff's Motion.

*/s/ Geoffrey Polk*
Geoffrey Polk, Esq.