IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEOFFREY POLK, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-02652 |
| | § | |
| THE TEXAS INSURANCE | § | |
| COMMISSIONER, | § | |
| *Defendant.* | § | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

TO THE HONORABLE U.S. DISTRICT JUDGE:

Defendant, the Texas Insurance Commissioner ("Commissioner"), files this Response to Plaintiff's Motion for Preliminary Injunction (Dkt. 10) and Brief in Support pursuant to Federal Rule of Civil Procedure 65(a), and in support thereof, would respectfully show unto the Court that Plaintiff's constitutional claims fail due to Plaintiff's failure to plead a claim upon which relief can be granted.[1] As such, the Court should dismiss all of Plaintiff's claims.

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

In his Motion for Preliminary Injunction ("Motion"), Plaintiff seeks a Declaratory Judgment and Injunctive Relief relating to Section 2652.051(c)(1) of the Texas Insurance Code which requires an individual to be a "bona fide resident" of Texas or a "state adjacent" to Texas to obtain an Escrow Officer License. Plaintiff alleges Section 2652.051(c)(1) and 2652.056(1) of the Texas Insurance Code violates the Privileges and Immunities Clause ( Dkt. 10, p. 19) and Equal

---

[1] Defendant currently has a Motion to Dismiss (Dkt. 8) pending before the Court that may be argued at the Initial Conference with Magistrate Judge Peter Bray on September 11, 2025. Many of the arguments set forth herein are similar to those in Defendant's Motion to Dismiss.

Protection Clause of the United States Constitution (Dkt. 10, p. 19) and seeks a Declaratory Judgment declaring these sections unconstitutional including injunctive relief to prohibit enforcement. Despite being the law of this State since at least 1967, Plaintiff seeks immediate relief from alleged irreparable harm resulting from enforcement of the residency provisions that have been in place for almost sixty years. Plaintiff's own arguments doom his position, and he is unable to satisfy the elements for a preliminary injunction.

## STANDARD OF REVIEW

A preliminary injunction is only appropriate when the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm absent relief; (3) that the threatened injury outweighs any harm the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 288 (5th Cir. 2012). Plaintiff is unable to satisfy any of the requisite elements to obtain preliminary injunctive relief, and his Motion should be denied.

Further, as explained by Plaintiff, "when analyzing a [s]tate statute under the rational basis test, the courts will not set aside a discriminating classification **if any** set of facts may be reasonable conceived to justify the classification." Mtn. at p. 13, citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456 (1981) (emphasis by Plaintiff). The court "will only examine if the [s]tate [l]egislature could have believed that the provision would further a legitimate purpose." *Id.* "Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Id.* citing *Vance v. Bradley,* 440 U.S. 93, 111 (1976).

**SUMMARY OF ARGUMENT**

Plaintiff's claims fail under two generally applicable reasons – (1) there is no fundamental right to be an escrow officer; and (2) the residency requirement advances substantial state interests. More specifically, Plaintiff cannot show a substantial likelihood of success on the merits, a substantial threat of irreparable harm, that balancing of threatened harms favors the Defendant, and any potential injunction would disserve the public interest.

**ARGUMENT**

**I.    Plaintiff's Claims Fail as the Statutes are Related to Legitimate State Interests**

    **A.    No Violation of the Privileges and Immunities Clause**

The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. ART. IV, § 2, cl. 1. The "primary purpose of this clause … was to help fuse into one Nation a collection of independent, sovereign States." *Toomer v. Witsell,* 334 U.S. 385, 395 (1948). As such, when examining whether a residency classification offends the Privileges and Immunities Clause, courts use a two-step inquiry. *See Reitz v. Kipper,* 674 F.Supp.2d 1194, 1201 (D. Nev. 2009). "First, we decide whether the activity in question is 'sufficiently basic to the livelihood of the *nation* … as to fall within the purview of the Privileges and Immunities Clause.'" *Council of Ins. Agents & Brokers v. Molasky-Arman,* 522 F.3d 925, 934 (9th Cir. 2008) (quoting *Supreme Ct. of Va. v. Friedman,* 487 U.S. 59, 64 (1988). "Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it *only if* we conclude that the restriction is not closely related to the advancement of a substantial state interest." *Id.* (quoting *Friedman,* 487 U.S. at 65).

        **1.    No Fundamental Right to be an Escrow Officer**

While "[i]t has been left to the Supreme Court and lower courts to define the scope of the Privileges and Immunities Clause," it is clear that the "fundamental rights" protected under the Privileges and Immunities Clause are "much narrower" than those protected by other constitutional

provisions." *Baldwin v. Fish and Game Comm'n of Montana,* 436 U.S. 371, 379-80 (1978). "Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Id.* at 383. Consequently, a "State [must not] always apply its laws or services equally to anyone, resident or nonresident, who may request it to do so." *Id.*

Plaintiff's claim that he is entitled to a Texas Escrow Officer license does not fall within the protections provided by the Privileges and Immunities Clause. "For it is '[o]nly with respect to those 'privileges' and 'immunities' bearing on the vitality of the Nation as a single entity' that a State must accord residents and nonresidents equal treatment." *Id.* at 64-65 (emphasis added).

In the *McBurney* case, petitioners challenged the residency requirement of the Virginia FOIA statute as violative of the Privileges and Immunities Clause because it denied them the right of access to public information on equal terms with the citizens of Virginia. *McBurney v. Young,* 569 U.S. 221 (2013). While upholding the residency restriction, the Court explained, "[i]t certainly cannot be said that such a . . . right has existed 'at all times, been enjoyed by the citizens of the several states which compose this Union, from the time of their becoming free, independent and sovereign." *Id.* at 233. The Court further explained, "[n]or is such a . . . right 'basic to the maintenance or well-being of the Union.'" *Id.* at 234. As applied here and similar to the Court's reasoning in *McBurney,* without an allegation that the Nation, as a whole, suffers from the residency requirement of the Texas Insurance Code, it must be upheld. "There is no contention that the Nation's unity foundered in [its] absence, or that it is suffering now because of the citizens-only . . . provision [that has been enacted]." *Id.*

While Plaintiff argues he has a "fundamental right" to pursue the "common calling" of being an Escrow Officer, Dkt. 1, ¶14, "[t]he Court has struck laws down as violating the privilege of pursuing a common calling *only* when those laws are enacted for the protectionist purpose of burdening out-of-state citizens." *Id.* at 227 (citing *Hicklin v. Orbeck,* 437 U.S. 518, 524 (1978)

(collecting cases) (emphasis added). Again, similar to *McBurney,* "[Plaintiff] does not allege—and has offered no proof—that the challenged provision of the [Texas Insurance Code] was enacted in order to provide a competitive economic advantage for [Texas] citizens." *Id.* at 228. In fact, just the opposite is true as Tex. Ins. Code § 2652.051(c)(1)(B) specifically provides that an applicant for a Texas Escrow Officer may be a bona fide resident of a state "adjacent to" Texas. "While the [Privileges and Immunities] Clause forbids a State from intentionally giving its own citizens a competitive advantage in business or employment, the Clause does not require that a State tailor its every action to avoid any incidental effect on out-of-state tradesmen." *Id.* at 229.

Escrow officers licensed by the State of Texas close sales transactions solely for real property located within the State of Texas. Accordingly, the requirements to obtain an escrow officer license in the State of Texas relate solely to transactions within the State of Texas. None of the requirements having any bearing upon "the vitality of the Nation as a single entity." *See Baldwin,* 436 U.S. at 379-80.

The rights, responsibilities and requirements for escrow officers has remained basically unchanged for almost sixty (60) years. *See* S.B. 262, Art. 9.43 60th Sess. (Tex. 1967). The continuous and constant regulations have provided for an efficient and orderly transaction process to acquire and dispose of real property within the State without any effect on the vitality of the Nation. The residency requirement is strictly related to real estate transactions involving real property within the State of Texas. It does not have any effect on the business of the Nation as a whole. Plaintiff's claim that being an escrow officer implicates a fundamental right is without merit, and, therefore, Plaintiff is unable to satisfy the first element to show entitlement to injunctive relief – a substantial likelihood of success on the merits.

### 2. The State of Texas Would Suffer Irreparable Harm

Even assuming *arguendo* that Plaintiff can support his claim that being an escrow officer is a "fundamental right," that does not, "in itself, prevent states from regulating the activity in a

manner which discriminates against nonresidents; [l]ike many other constitutional provisions, the privileges and immunities clause is not an absolute." *Silver v. Garcia,* 760 F.2d 33, 38 (1st Dist. 1985) (quoting *Toomer,* 334 U.S. at 396). "Discrimination against nonresidents is permitted where: (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Id.* (quoting *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 284 (1985) (emphasis added).

The State of Texas undoubtedly has a substantial interest in ensuring all parties to a real estate transaction are protected from theft, fraud and other misdeeds that may occur during the exchange of funds relating to the transaction. Additionally, the State of Texas has a substantial interest in ensuring an orderly and documented process for such transactions. In the event any of the parties or related entities involved in the sale of real property in Texas were required to enforce their rights out of state, the potential for real chaos would exist. To alleviate those concerns, in 1967, the State of Texas passed legislation to protect all parties in real estate transactions; buyers, sellers, trustees, mortgagors, lienholders, and service providers involved in the transaction. One such requirement is that the person responsible for collecting and disbursing the escrowed funds related to the transaction, the escrow officer, must be a resident of the State of Texas or an adjacent state to be appointed by a title insurance agency located within the State. Keeping the escrowed funds within state lines and subject to the jurisdictional boundaries of the State of Texas helps to ensure the safety of the escrowed funds and protects both the individual and corporate entities' rights to such funds. There is a multitude of factors supporting the State of Texas' substantial interest in ensuring the fair and expected outcome of transactions involving real property within its borders. The fact that the protective requirements have been in place for almost sixty (60) years is indicative of such interest.

"The privileges and immunities clause acts primarily as a restraint upon state action which interferes with 'interstate harmony," *United Bldg. and Const. Trades Council of Camden County*

*v. Mayor and Council of Camden,* 465 U.S. (1984), or the development of a "national economic union." *Piper,* 470 U.S. at 280. While the Privileges and Immunities Clause bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States … it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." *Toomer,* 334 U.S. at 395 (emphasis added). For the reasons discussed *supra,* the decades-old residency requirement for escrow officers does not involve a fundamental right and advances a substantial state interest of protecting the parties to real estate transactions in the State of Texas. Indeed, the State would certainly suffer substantial harm in the event the efficient, orderly process of closing real estate sales transactions in existence for decades was interrupted without a properly proven basis.

### 3. The Balancing of Equities Favors the State.

Here, whenever the "State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Texas Dem. Party v. Abbott,* 961 F.3d 389, 411 (5th Cir. 2020); *see also, Valentine v. Collier,* 956 F.3d 797, 803 (5th Cir. 2020) ("[T]he district court's injunction prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury.") And because, as the "[Texas] Supreme Court has repeatedly reaffirmed," the State has "an 'intrinsic right to . . . enforce its own laws," *City of San Marcos*, 714 S.W.3d 224, 245 (Tex.App.--15th Dist. 2025) (quoting *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020), the "equitable balancing of th[e] harms" favors the State. *In re State*, 711 S.W.3d 641, 645 (Tex. 2024). By contrast, Plaintiff is "not harmed by being required to follow" the law. *Id.*

### 4. The Public Interest Does Not Favor an Injunction.

An injunction goes against the public interest for two key reasons. *First,* a "preliminary injunction is an extraordinary remedy; it should be granted only if the plaintiff clearly carries the burden of persuasion as to all four factors." *Miss. Power & Light v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir. 1985). Even truer when Plaintiff seeks to "thwart a State's presumptively

reasonable democratic process." *Planned Parenthood Minn. v. Rounds,* 530 F.3d 724, 733 (8th Cir. 2008).

*Second,* an injunction destabilizes the status quo. As explained herein, the residency requirement has been enforced for almost sixty years. All parties – buyers, sellers, banks and other commercial parties – have expectantly relied upon the efficiencies and protections of the real estate closing process employed by the State for decades. Any interruption of same has the potential to drastically upend the process Texas consumers expect and understand. As such, the residency requirement should remain in force and effect during the pendency of this litigation.

    **B.**    **Plaintiff's Equal Protection Claim Fails.**

Plaintiff also seeks a Declaratory Judgment that Section 2652.051(c)(1) and Section 2652.056(1) of the Texas Insurance Code are unconstitutional and in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230 (1981). When social or economic legislation is to be reviewed, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process and not by the courts. *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174 (1980).

The State of Texas certainly meets the rational basis test through the enactment and enforcement of Section 2652.051(c)(1) and Section 2652.056(1) of the Texas Insurance Code (residency requirements for escrow officers). These Sections help protect all parties to real

property transactions within the State of Texas by ensuring the funds transmitted during the transaction are safely and securely transferred to the appropriate parties.

The escrow officer's duties, as part of closing a transaction and defined in Texas Insurance Code § 2501.006(b)(4) and the Title Insurance Basic Manual, Section IV, Procedural Rule P-1 as adopted by Title 28, Texas Administration Code, Section 9.1, include ensuring that all proceeds are properly distributed, including handling all receipts and disbursements, paying off existing liens, distributing payments to all service providers and transferring settlement funds. In accordance with Sections 2652.003 and 2652.004, these funds must be distributed through the officer's trust accounts, i.e. a lawyer's IOLTA account, or the title insurance agent's escrow account. These provisions, along with other Texas Insurance Code requirements including a physical presence within the State, trust accounts be held within banks with branches located within the State and Secretary of State registration requirements, seek to guarantee that all settlement funds related to the sale of Texas properties are protected and/or protectable to ensure the orderly and efficient sale of properties within the State.

In the event State officials, Department personnel or Texas attorneys were required to pursue enforcement to protect settlement funds in other states, logistical and procedural barriers would certainly implicate the safety of such funds and potentially destroy the safe and reliable sales process that has existed for years. Conflict of law issues, time constraints and other plausible barriers would further deteriorate the confidence of both buyers and sellers of Texas real estate. Clearly, the residency requirement for escrow officers is rationally related to the protection of consumers and corporate entities alike involved in the purchase and sale of Texas real estate.

The residency requirement for escrow officers has been in effect since at least **1967** and is based on legitimate state interests. The residency requirement, along with other provisions of the Insurance Code have ensured the orderly processing of real estate sales for almost sixty (60) years and should remain intact.

## PRAYER

As Plaintiff is unable to meet any of the requisite elements to obtain preliminary injunctive relief, Plaintiff's Motion for Preliminary Injunction should be denied.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ William H. Farrell*
WILLIAM H. FARRELL
Assistant Attorney General
Attorney-In-Charge
Texas Bar No. 00796531
Southern ID No. 21733
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 979-5561| FAX: (512) 320-0667
biff.farrell@oag.texas.gov
**ATTORNEYS FOR DEFENDANT,
TEXAS INSURANCE COMMISSIONER**

## CERTIFICATE OF SERVICE

I certify that on September 8, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ William H. Farrell*
WILLIAM H. FARRELL
Assistant Attorney General